22-07110MB(JR)

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT
# PURPOSE OF AFFIDAVIT

1. I, Guillermo A. Carrera, Task Force Officer (TFO) of Homeland Security Investigations (HSI) Nogales, Arizona, being first duly sworn, depose and state as follows:

2. I submit this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet, as well as electronic devices with storage capability (the Target Phones, defined below); and the extraction from the Target Phones of electronically stored information further described in Attachment B hereto.

3. My knowledge of the facts alleged in this affidavit arise from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation. As this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Phones, I have set forth only the facts which I believe are necessary to establish probable cause to search the Target Phones.

## AGENT'S BACKGROUND

4. I am currently assigned as a Task Force Officer (TFO) to the Joint Port Enforcement Group (JPEG) of Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) Office of the Assistant Special Agent in Charge (ASAC) in Nogales, Arizona. I have been in this assignment as a Task Force Officer since December 2021.

5. Prior to becoming a Task Force Officer, I was a U.S. Customs and Border Protection Officer (CBPO) with the CBP Office of Field Operations (OFO), assigned to the DeConcini Port of Entry (POE) in Nogales, Arizona. I was a CBP Officer for over three (3) years. As part of becoming a CBP Officer, I attended and graduated from the CBP Officer Basic Training Academy at the Federal Law Enforcement Training center (FLETC)

in Glynco, Georgia. I received instruction in constitutional law, immigration law, criminal law, and federal criminal and civil statutes.

6. As a Task Force Officer with HSI, I am responsible for investigating laws and enforcing violations of federal law to include the enforcement of Title 8, Title 19, and Title 21 of the United States Code, and other federal customs and immigration laws. Through my training and experience, I have received instruction and worked on investigations involving controlled substances and other contraband smuggling, operations of drug trafficking organizations (DTOs), contraband concealment and transportation techniques, interdiction operations, surveillance techniques, report writing, confidential source management, and training regarding the interception of wire, oral, and electronic communications, among other areas. I continue to receive training on search and seizure, evidence collection, interviewing techniques, interrogations, operational techniques, and structure of contraband smuggling organizations. My responsibilities include conducting investigations into DTOs and individuals who derive substantial income from the illicit movement and distribution of narcotics and/or firearms.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The electronic communication devices to be examined are described as the following:

    a. One (1) Apple iPhone S, Model A1688 cellular phone, gray in color with a cracked screen, bearing International Mobile Equipment Identity (IMEI): 355696079063497. (hereinafter referred to as the "**Target Phone 1**")

    b. One (1) T-Mobile Revvl cellular phone, black in color, bearing International Mobile Equipment Identity (IMEI): 015702000699714. (hereinafter referred to as the "**Target Phone 2**")

8. **Target Phone 1** and **Target Phone 2** to be searched pursuant to the attached application is further described in Attachment A hereto.

9. **Target Phone 1** and **Target Phone 2** were seized on March 03, 2022, from Cindy MARTINEZ (hereinafter referred to as MARTINEZ). **Target Phone 1** and **Target Phone 2** are currently being stored as evidence at the HSI Nogales Field Office vault in Nogales, Arizona.

## BACKGROUND ON SMARTPHONES

10. Based upon my knowledge, training, and experience, as well as information related to me by other law enforcement officers and others experienced in the forensic examination of electronic communication devices, I know that certain types of cellular telephones referred to as "smartphones" (such as the **Target Phone 1** and **Target Phone 2**) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, or has connected to a wireless network, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

11. As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used **Target Phone 1** and **Target Phone 2** as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

12. As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored within **Target Phone 1 and Target Phone 2**. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

13. Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), an electronic communication device (such as **Target Phone 1 and Target Phone 2**) can contain other forms of electronic evidence that are not user-generated. In particular, electronic communication devices may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers,

and other persons involved in the forensic examination of electronic communication devices, I know that:

a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

f. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

g. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user. All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

h. The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used. Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN
## DRUG-TRAFFICKING ORGANIZATIONS (DTOs)

14. Based upon my knowledge, experience, and training in DTO investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common amongst individuals involved in DTOs. Individuals involved in drug-trafficking activity tend to:

    a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

    b. Collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

    c. Possess and maintain records reflecting bank transactions and/or money transfers;

    d. Maintain collections of records that are in a digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target phones). These records are often maintained for several years and are kept in close proximity to the drug-trafficker/cash-smuggler, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

    e. Correspond with and/or meet with other drug-trafficking associates to share drug-trafficking/cash-smuggling information and/or materials;

    f. Retain correspondence from other drug-trafficking co-conspirators relating to drug-trafficking/cash-smuggling activity;

    g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted drug-trafficking activity;

    h. Use multiple telephones for communication with coordinators, scouts and other drug-trafficking co-conspirators. Many of these phones are more commonly known as "burner phones." These "burner phones" are used almost exclusively in the commission of the drug-trafficking crime, specifically to call other co-conspirators to discuss the arrangements, which include the pick-up and drop-off of the illegal drugs. "Burner phones" are used to mask or conceal the identity of the actual user/owner and to provide a way to compartmentalize the user/owner's illicit activity. These "burner phones" are usually inexpensive and used for a brief and limited period of time until discarded. In addition, the "burner phones" are often discarded once the user/owner suspects any law enforcement activity;

    i. Use multiple telephones for communication with coordinators, scouts and other drug-trafficking co-conspirators. On many occasions, the principle subject will also have a personal telephone in their possession. The personal phone will have a history of phone calls, or text messages, with other subjects involved in the drug-trafficking conspiracy, as the principle subject is usually introduced into the conspiracy through social contacts. These conversations will occur prior to and after the smuggling attempt. These will often be saved by the user/owner of the phone. Additionally, principles have been known to use Facebook, messaging, WhatsApp, Telegram, or other third party social media messaging applications. The personal cell phone often will have the identities of additional co-conspirators saved in the contact log.

## BACKGROUD OF INVESTIGATION

15. On March 03, 2022, Customs and Border Protection (CBP) Officers with the Office of Field Operations (OFO) – Nogales, Arizona, encountered Cindy MARTINEZ, a U.S. Citizen, at the DeConcini Port of Entry in Nogales, Arizona. MARTINEZ was traveling into the U.S. from Mexico as the front passenger and registered owner of a 2005 Chrysler Pacifica. An x-ray scan of the vehicle showed anomalies in the rear quarter panels and spare tire. A CBP canine alerted to a trained odor of narcotics emitting from the rear of the vehicle. CBP Officers conducted an inspection of the vehicle and discovered 132 packages concealed within the rear quarter panels and spare tire. The packages tested positive for methamphetamine and had an approximate total weight of 66.72 kilograms. On Friday, March 4, 2022, during CBP re-inspection of the vehicle, eight (8) more packages were discovered in the roof area of the vehicle: five (5) packages containing fentanyl and three (3) packages containing methamphetamine. The five (5) packages containing fentanyl had a total weight of 1.24 kilograms and the three (3) packages containing methamphetamine had a total weight of 1.52 kilograms. In total, to include the additional packages found, CBP seized 1.24 kilograms of fentanyl and 68.24 kilograms of methamphetamine. MARTINEZ was arrested and charged with Title 21, United States Code, section 841, Possession with intent to distribute fentanyl and methamphetamine.

**PROBABLE CAUSE**

16. The CBP Officer (CBPO) that encountered MARTINEZ during post-primary inspection on March 03, 2022, observed MARTINEZ texting, and trying to place a phone call on one of her phones (**Target Phone 1** or **Target Phone 2**) on multiple occasions, even after being instructed to not use her phone. The Officer noted that MARTINEZ was very nervous and was overly insistent on using her phone.

17. During a post-Miranda interview with TFO and HSI Special Agent, MARTINEZ stated she had her car fixed by an unknown mechanic in Mexico. MARTINEZ stated she did not know the mechanic. MARTINEZ stated she would call her cousin and her cousin would call the mechanic. MARTINEZ stated her cousin coordinated between her and the mechanic. MARTINEZ stated she communicated with her cousin through her phone (**Target Phone 1** or **Target Phone 2**). MARTINEZ claimed ownership of both **Target Phone 1** and **Target Phone 2**.

18. HSI Task Force Officer and Special Agents further observed multiple missed calls and text messages displayed in the main screen of **Target Phone 1** and **Target Phone 2.** Based on my training and experience, DTOs often require the drivers of narcotics-laden vehicle to provide real-time updates of their location. If an update is not received in a timely matter, DTO members will contact the drivers and request the needed information. Subsequently, this results in multiple missed calls and text messages at the time of arrest.

19. I submit that there is probable cause to believe that **Target Phone 1** and **Target Phone 2** requested to be searched may contain evidence identifying: (1) cellular telephone numbers used by drug-trafficking associates; (2) telephone calls conducted with drug-trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug-trafficking co-conspirators, illegal controlled substances, and/or bulk illicit currency; (4) text and/or voicemail message communications (including time and date) with drug-trafficking associates; (5) electronic mail and social media internet sites accessed by the user of the **Target Phone 1** and **Target Phone 2**; and (6) usernames and/or passwords utilized by the user of the **Target Phone 1** and **Target Phone 2** to access electronic mail and social media internet sites.

20. Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that DTOs utilize cellular

telephones (such as the **Target Phone 1** and **Target Phone 2**) to communicate when conducting their illegal activity, utilizing voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. These devices are utilized in furtherance of the crime via the coordination of transport and distribution of controlled substances, the collection and movement of bulk illicit currency, as well as communication with members of the DTO about the specific operations of that DTO.

## ADVANCED DIGITAL DATA EXTRACTION REQUEST

21. This warrant provides authorization for law enforcement officers of the HSI Nogales ASAC Office or their designee to search the above-listed device(s) and/or associated peripheral equipment, including by way of example but not limitation, subscriber identity module (SIM) card(s), removable storage media, and/or paired or synced device(s), for the evidence listed in the affidavit and warrant using a range of data analysis techniques. However, in some cases, the cellular communication device(s) may be damaged beyond repair, password-protected or otherwise inoperable and less invasive data analysis techniques will not accomplish the forensic goals of the examination. In these cases, an analysis technique referred to as "chip-off" may be implemented to conduct the data extraction process. Chip-off is an advanced digital data extraction and analysis technique which involves physically removing flash memory chip(s) from a subject device and then acquiring the raw data using specialized equipment. This process renders the cellular communication device unusable.

22. I am respectfully requesting authorization to conduct an advanced digital data extraction technique, more commonly known as a "chip-off," of the above-listed device(s) in the event and only after less invasive traditional data analysis techniques fail.

## REQUEST FOR NIGHTIME AUTHORIZATION

23. I am requesting permission to serve this search warrant at any time day or night as there is good cause. **Target Phone 1** and **Target Phone 2** are already in possession of law enforcement. Consequently, service of the warrant will not involve physical intrusion into any premises where person(s) could be disturbed outside of normal daytime hours. Further, cellular devices such as **Target Phone 1** and **Target Phone 2** often contain voluminous digital data. Downloading this data could extend well into nighttime hours.

## CONCLUSION

24. Based upon the foregoing, I believe that probable cause exists to search the **Target Phone 1** and **Target Phone 2** for the items set forth in Attachment B hereto. I believe that **Target Phone 1** and **Target Phone 2** contain evidence relating to the commission of criminal offenses, which are, Conspiracy to Possess with Intent to Distribute controlled substances, in violation of Title 21, United States Code, Section 846, Possession with the Intent to Distribute controlled substances, in violation of Title 21, United States Code, Section 841, Importation of controlled substances, in violation of Title 21, United States Code, Section 952, Conspiracy to Import controlled substances in violation of Title 21, United States Code, Section 963, and as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

25. **Target Phone 1** and **Target Phone 2** have been in the possession of ICE-HSI since their seizure. Due to the nature of such electronic devices, data contained within will remain uncorrupted when being stored for long periods of time. I respectfully request that a warrant be issued, allowing for the search of **Target Phones 1** and **Target Phone 2** as described above.

Respectfully, submitted this 21st day of March 2022.

GUILLERMO A. CARRERA
Digitally signed by GUILLERMO A CARRERA
Date: 2022.03.22 10:22:53 -07'00'

Guillermo A. Carrera, Task Force Officer
Homeland Security Investigations

Sworn and subscribed to telephonically this 22nd day of March, 2022.

Honorable Jacqueline M. Rateau
United States Magistrate Judge

## ATTACHMENT A

The items to be searched are described below:

a. One (1) Apple iPhone S, Model A1688 cellular phone, gray in color with a cracked screen, bearing International Mobile Equipment Identity (IMEI): 355696079063497. (hereinafter referred to as the "**Target Phone 1**")

 

b. One (1) T-Mobile Revvl cellular phone, black in color, bearing International Mobile Equipment Identity (IMEI): 015702000699714. (hereinafter referred to as the "**Target Phone 2**")

 

Items described above are currently in the custody of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI").

**ATTACHMENT B**

1. All records on **Target Phone 1** and **Target Phone 2** described in Attachment A that relate to the violations and suspect information set forth in the Affidavit, including:

   a. Cellular information: cellular numbers, cellular service providers, caller identifications displaying sent, received, dialed and missed calls;

   b. Text information: text messages received, sent, drafted, and deleted;

   c. Pictures: pictures taken, received, sent, saved, and deleted;

   d. Videos: videos taken, received, sent, saved, and deleted;

   e. Audio: audio taken, received, shared, sent, saved and deleted;

   f. Emails: emails sent, received, drafted, saved and deleted;

   g. Contact information: telephone contact list displaying names, addresses, telephone numbers, and deleted information;

   h. User attribution: evidence of user attribution showing who used or owned **Target Phone 1 and Target Phone 2** at the time things described in this warrant were created, edited or deleted, such as logs, phone books, saved user names and passwords, documents and browsing history;

   i. Notes: all bank records, credit information, account information or other financial information and records;

   j. Travel information: any information recording travel arrangements during the time period set forth in the Affidavit and until the present; and

   k. Internet: records of Internet Protocol addresses used, and any records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.